IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TONYIA P.,[1]                                              No. 6:20-cv-942-MO

                   Plaintiff,                             OPINION & ORDER

          v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                   Defendant.

MOSMAN, District Judge:

      This matter comes before me on Plaintiff Tonyia P.'s Complaint [ECF 1] against

Defendant Commissioner of the Social Security Administration. For the reasons given below, I

AFFIRM the Commissioner's decision and DISMISS this case.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

1 – OPINION & ORDER

## PROCEDURAL BACKGROUND

On September 26, 2017, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, alleging disability beginning September 30, 2012. Tr. 28. The Social Security Administration ("SSA") denied her claim initially and upon reconsideration. Tr. 74, 84. Plaintiff appeared and testified at a hearing before Administrative Law Judge ("ALJ") Mark Triplett on June 20, 2019. Tr. 40-66. On July 10, 2019, the ALJ issued a decision denying Plaintiff's claims for benefits. Tr. 26-34. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between her alleged onset date of September 30, 2012, through her date last insured of December 31, 2014. Tr. 28. At step two, the ALJ determined that Plaintiff had the following severe impairment: Huntington's disease. Tr. 28. At step three, the ALJ found that Plaintiff's impairment did not meet the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. Tr. 29. The ALJ assessed Plaintiff's residual functional capacity ("RFC"), as follows:

> to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally balance and tolerate no exposure to workplace hazards such as unprotected heights and exposed moving machinery.

Tr. 29-30.

At step four, the ALJ determined that Plaintiff could perform her past relevant work as a receptionist. Tr. 32-33. Alternatively, at step five, the ALJ found that Plaintiff retained the capacity to perform jobs that exist in significant numbers in the national economy, specifically

bench assembler, garment sorter, and counter clerk. Tr. 33-34. The ALJ therefore found Plaintiff not disabled. Tr. 34.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises three issues with the ALJ's decision. First, she contends that the ALJ unreasonably discounted lay witness statements without providing germane reasons for doing so. Second, Plaintiff argues that the ALJ erred in determining her date last employed. And third, Plaintiff argues the ALJ should have further developed the record. I address each issue in turn.

## I.    Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from

nonmedical sources" using the same criteria required for the evaluation of medical sources. 20

C.F.R. §§ 404.1520c(d), 416.920c(d). Under the new regulations, however, the ALJ must still

articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526

F.Supp.3d 858, 869 (D. Or. 2021).

The ALJ must give reasons "germane to the witness" when discounting the testimony of

lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's

testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114. If the ALJ

gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to

those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where

"lay witness testimony does not describe any limitations not already described by the claimant,

and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well

to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is

harmless. *Id*. at 1117, 1122.

In April 2019, Plaintiff's husband submitted a letter in support of Plaintiff's disability

claim. Tr. 266. He described how he met Plaintiff in 2011 when she was still able to

communicate well, but that within the next year or two she started to be very hesitant. Tr. 266.

Plaintiff's husband also shared that before 2014, he observed her ability to speak diminish from

having a full conversation to only being able to focus on one thing at a time. Tr. 266. He also

shared that she went from answering a question in a "normal" amount of time to taking

somewhere closer to 5 minutes, and that he was able to watch her many facial expressions as she

had to work to form her response. Tr. 266. Plaintiff's husband also reported that in June 2012,

Plaintiff began having sleep issues due to restless legs. Tr. 266. Around that same time he also

noticed she had more "involuntary movements" throughout the day, causing her to be unstable while standing and walking. Tr. 266.

The ALJ supportably discounted Plaintiff's husband's third party statements as inconsistent with objective medical evidence. "An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).[2] The ALJ contrasted Plaintiff's husband's statements in his April, 2019 letter about the severity of her Huntington's disease physical symptoms with a 2016 treatment note where he downplayed those same limitations. Tr. 31 (citing Tr. 410 (where Plaintiff's husband agreed with Plaintiff's assessment that any movement symptoms she had "[did] not really have any impact on her function.")). It was not until 2017, several years after the relevant period, when the medical record shows Plaintiff suffered constant motion of her head, neck, and lower limbs. Tr. 407. Plaintiff's husband's 2019 assessment of her speech issues during the relevant period clashed with the medical record as well. The ALJ highlighted that Plaintiff's doctor noted "some changes in her voice volume and vocal persistence" in 2016, but that this was not a "major problem." Tr. 31 (citing Tr. 410). The ALJ acknowledged that Plaintiff's more recent treatment notes reflect the symptoms Plaintiff's husband describes in 2019, but ultimately found the contemporaneous

---

[2] Plaintiff argues it is "error under case law" to rely on inconsistency with the record to disregard lay witness testimony. Pl. Br. at 7 (citing *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017)). But Plaintiff mistakes inconsistency (an acceptable "germane reason") for lack of support, (which is not). The Ninth Circuit has clarified that generalized conclusions that lay witness testimony "lack[s] support from the 'overall medical evidence'" is not a proper basis for disregarding it. *Diedrich*, 874 F3d at 640. Inconsistency with the medical record is. *Bayliss*, 427 F.3d at 1218; *c.f. Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (noting that inconsistency with objective medical evidence is a sufficient "clear and convincing" reason to discount a claimant's testimony, whereas "lack of medical evidence to fully corroborate" a piece of testimony is not). Since the ALJ relied on several inconsistencies with the medical record, not a generalized "lack of support," the ALJ did not err.

medical records, including statements by Plaintiff's husband himself at the time, conflicted with

the limitations outlined in the 2019 letter. Tr. 31. These were germane reasons for the ALJ to rely

upon to discount Plaintiff's husband's lay witness statement.[3]

      Furthermore, any error in failing to address the lay witness statement would be harmless.

An ALJ's failure to provide germane reasons for rejecting lay witness evidence is harmless

where an ALJ properly rejects a claimant's testimony and the lay witness evidence describes the

same limitations. *Molina v. Astrue*, 674 F.3d at 1104, 1122 (9th Cir. 2012) *superseded on other

grounds by* 20 C.F.R. § 404.1502(a). Here, the ALJ's clear and convincing reasons for

discounting Plaintiff's self-reports, which Plaintiff does not contest, apply equally well to the

similar statements from her husband. *Compare* Tr. 48-62 (Plaintiff's testimony) *with* Tr. 266

(Plaintiff's husband's April, 2019 letter). Plaintiff's hearing testimony tracks Plaintiff's

husband's third party statement regarding her difficulties with balance, speech, and irritability.

Tr. 48-62. The ALJ found Plaintiff's "current statements about the intensity, persistence, and

limiting effects of her symptoms are inconsistent with the contemporaneous treatment notes that

show little in terms of Huntington's related functional deficits during the insured period." Tr. 31.

By contrast, the ALJ noted, the medical record showed Plaintiff's significant Huntington's

---

[3] Plaintiff also contends the ALJ erred by improperly rejecting a lay witness statement about her mobility embedded in a in a treatment note from July, 2012 with Plaintiff's treating provider Dr. Jerry Boggs. Pl. Br. at 9 (citing Tr. 767). This is simply part of the "other medical evidence" that makes up part of the record, not freestanding lay witness testimony that the ALJ had a responsibility to accept or reject for a germane reason. 20 C.F.R. § 404.1513(a)(3) (defining "other medical evidence"). This was evidence was from a medical source, Dr. Boggs, and the ALJ evaluated it along with the rest of the medical evidence in his opinion. Tr. 31.

      Even if it were error for the ALJ to have failed to treat Dr. Boggs' incorporation of Plaintiff's friend's statement in his medical note as standalone lay witness testimony, any error would be harmless. The reasons the ALJ provided for rejecting Plaintiff's and Plaintiff's husband's similar testimony about mobility issues apply with equal force. *Molina*, 674 F.3d at 1122.

symptoms started worsening in 2017. Tr. 31 (citing Tr. 410). Plaintiff does not contest that it was

proper for the ALJ to discount her hearing testimony. *See* Pl. Br., ECF No. 21. Any error in

analyzing Plaintiff's husband's similar statements was therefore harmless.

## II.    Plaintiff's Work History

Plaintiff further argues the ALJ erred by finding that she stopped working in 2009, rather

than 2012. Pl. Br. at 10. Plaintiff believes that her actual employment history—showing she

worked from 2011-2012— "is in direct contrast to the ALJ's statement and basis, and his

understanding of the case, and such is harmful error, and moreover is harmful error as it was

consequential to the ultimate disability finding in the context of the record as a whole." *Id.*

Plaintiff believes the ALJ's reliance on a 2009 termination based on work performance was "a

clear error," because "[t]he ALJ relied on this incorrect reasoning and conclusion in denying

Plaintiff disability." Pl. Reply, ECF No. 25 at 8. Plaintiff does not point to which part of the five-

step process this affected, or do more than offer the conclusion that this alleged error was

harmful. *See id.*

The Court finds no error here, and certainly none that did Plaintiff any harm in the

disability determination process. Plaintiff alleged disability beginning September 30, 2012. Tr.

179. At step one, the ALJ properly found Plaintiff had not engaged in any SGA after that date.

Tr. 28. The relevant period, then, was between September 30, 2012, and December 31, 2014,

Plaintiff's date last insured. Tr. 28. Plaintiff's prior work history only cropped up later in the

decision, when the ALJ considered the consistency of Plaintiff's husband's lay witness statement

with the medical record, and noted that Plaintiff was laid off in 2009 for work performance

issues. Tr. 31. Plaintiff has asserted that she worked after that, for approximately one year from

October 2011 to September 2012 as an adult caregiver for her brother. Tr. 201-02. But Plaintiff's

official earnings records filed with the Agency and the Internal Revenue Service do not show any earnings after 2009. Tr. 180-81, 184, 188-89, 192. Nor does the record contain any other evidence of SGA during that time. *Ibid.* Based on the evidence in front of the ALJ, it appeared the ALJ got it right, and Plaintiff's last gainful employment ended in 2009. The ALJ did not err by citing Plaintiff's 2009 termination, or by neglecting to mention Plaintiff's alleged 2011-12 employment alongside it.

Even if the ALJ got it wrong, the ALJ's citation to Plaintiff's 2009 termination could not have harmed Plaintiff's chances at applying for DIB, so any error would be harmless. An error is harmless if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout*, 454 F.3d at 1055. Plaintiff's alleged error—that the ALJ portrayed her work as ending in 2009, rather than 2012—had no apparent effect on the outcome of the disability decision, and was not prejudicial. Plaintiff identifies no step of the five-step process that came out the wrong way because the ALJ relied on a mistaken understanding of her last day of work. *See* Pl. Br, ECF No. 21. Therefore, even if Plaintiff had identified an error, it would be harmless.

## III.    Obligation to Develop the Record

Plaintiff also argues the ALJ erred by failing to develop the record as "to any ambiguous evidence," or "in any area where the record is inadequate to allow for a proper evaluation of the evidence." Pl. Br. at 11. As a general matter, the ALJ has a duty to develop the record, but Plaintiff retains the burden to prove that she is disabled and must inform the agency about or submit all evidence known to her that relates to the alleged disability. *Valentine v. Comm'r Soc. Sec. Admin*., 574 F.3d 685, 689 (9th Cir. 2009); 20 C.F.R. § 404.1512(d). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the

record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). This principle does not, however, allow a claimant to shift her own burden of proving disability to the ALJ. *Id*. at 459.

The ALJ did not err by failing to develop the record as to insufficient or ambiguous evidence. As noted above, it is the claimant's burden to provide sufficient evidence to demonstrate disability. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.1998); 20 C.F.R. § 404.1512(c). Plaintiff argues that because at one point during the process the Agency requested further evidence to evaluate her condition prior to the date last insured, (Tr. 107) and she provided it (Tr. 2), that the ALJ's obligation to further develop the record was somehow triggered. Pl. Br at 11. Neither the request for further information, or certainly the fact that Plaintiff submitted the requested evidence, shows the record was ambiguous or inadequate to evaluate Plaintiff's disability allegation during the relevant period. Absent either of those, which Plaintiff fails to identify, the ALJ had no obligation to further develop the record in this case, and did not err.

## CONCLUSION

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case with prejudice.

IT IS SO ORDERED.

DATED: _____1/3/2024_____.


*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge